### In re WHITTAKER et al.

No. 1922.

District Court, D. Montana.
Jan. 5, 1932.

F. A. Ewald, of Great Falls, Mont., for bankrupt.

F. L. Graybill, of Great Falls, Mont., for petitioning creditor.

PRAY, District Judge.

The motion of the creditor, Merchants' Credit Service, Inc., to dismiss petition of bankrupt, Dewey F. Whittaker, for discharge, is here under consideration, following oral argument and submission of briefs. The principal grounds alleged are that bankrupt has been guilty of extreme laches and inexcusable negligence; that he has designed to hinder and delay his creditors; that his creditors have been prejudiced, and that he has taken advantage unfairly of the court and of the provisions of law designed to protect the interests of his creditors; that he has delayed the prosecution of his petition for discharge for an unreasonably long time, and is therefore not entitled to a discharge.

If bankrupt were diligent, is he chargeable with the neglect of his counsel? He paid his attorney $100 to conduct bankruptcy proceedings. Later, upon demand of his attorney, he paid him $4 more for costs, and during the progress of the proceeding repeatedly inquired of his counsel whether his discharge had been obtained, and was repeatedly assured by the latter that everything had been given proper attention; and was at one time told that the reason the discharge had not been sent to him (bankrupt was for several months absent from Montana) was that the files containing it were at the time of inquiry stored away in a basement with other papers of his counsel, and not readily accessible, but would be secured and given to bankrupt. Bankrupt said that he believed the assurances of his counsel until he learned otherwise through threats of the above-named creditor, followed by this motion to dismiss his petition for discharge, all of which in substance was admitted by his attorney, and stands uncontradicted.

Other material facts are: Petition in bankruptcy was filed by Dewey F. Whittaker December 31, 1927, followed by order of adjudication on January 12, 1928; petition for discharge was filed April 12, 1928; referee's costs for notices were paid August 24, 1931, and clerk of the court notified of such payment. On September 17, 1931, the above-named creditors filed herein motion for dismissal of petition for discharge supported by affidavit. Thereafter answer of bankrupt and affidavit of his attorney were filed, followed by counter affidavit on behalf of creditor. The motion was thereafter regularly heard and testimony given by bankrupt and his attorney, followed by testimony in behalf of the creditor.

In his testimony before the court, counsel for bankrupt offered excuses, such as a primary campaign in June and July, 1928, followed by six weeks' absence on the Pacific Coast, and other matters and business generally which occupied his time.

Thereafter oral argument was made and briefs submitted. After consideration of the law and the facts, it appears that counsel for bankrupt is guilty of gross negligence and laches in failing for a period of over four years to bring on for hearing the petition for discharge filed herein on April 12, 1928. An illustration of the principles of law involved herein, but based upon a more aggravated state of facts, will be found in an able opinion written by Circuit Judge Sanborn of the

Eighth Circuit in Lindeke v. Converse (C. C. A.) 198 F. 618, 623, in which he said:

"A proceeding in bankruptcy is a proceeding in equity. The bankrupt, after a neglect to file her petition for discharge until more than 16 months after she was adjudged a bankrupt, and after a delay of more than 4 years and 4 months after she filed her application for a discharge, was for the first time praying the court to hear and grant it. It is an immemorial principle of equity jurisprudence that nothing but conscience, good faith, and reasonable diligence can call a court of equity into action. Smith v. Clay, 3 Brown's Chancery, 639; State of Iowa v. Carr, 191 F. 257, 270, 112 C. C. A. 477. 'It has been frequently held,' says the Supreme Court, 'that the mere institution of a suit does not of itself relieve a person from the charge of laches, and that, if he fail in the diligent prosecution of the action, the consequences are the same as though no action had been begun.' Johnston v. Standard Mining Co., 148 U. S. 360, 370, 13 S. Ct. 585, 589, 37 L. Ed. 480; Willard v. Wood, 164 U. S. 502, 505, 17 S. Ct. 176, 41 L. Ed. 531. Undoubtedly it was not the intention of the Supreme Court by this statement to hold or intimate that a complainant who had commenced a suit or proceeding would be guilty of the same degree of laches as one who had not done so. But it clearly was its purpose to declare that the institution of a legal proceeding would not relieve the actor from laches before or after its commencement. Let us try the question in this case by these rules. Had the defendant in the autumn of 1911 exercised such reasonable diligence to obtain a hearing and decision upon her application for a discharge as ought to call a court of equity into activity on her behalf? She neglected to file her petition within the year limited by the bankruptcy law for its filing. That law provides that it may be filed within the next six months after the year only when 'it shall be made to appear to the judge that the bankrupt was unavoidably prevented from filing it' within the year, section 14a [11 USCA § 32]. What was made to appear to the judge according to the record in hand, on which this court must decide this case, was that the petition was signed and in the hands of the bankrupt's attorney in June, 1906, that he was busy and at times absent from his office in the fall of 1906, and from January 1, 1907, until April 26, 1907, when he applied to the court to file it. There was, however, no showing that he was prevented by business or absence, or by any means whatever, from filing it in June, July, or August, 1906, or that either he or the bankrupt had been 'unavoidably prevented' from filing it within the year. It was filed on April 26, 1907, and then for more than four years and four months the bankrupt and her attorney neglected to apply to the court or clerk to bring the application to a hearing, while witnesses who knew the facts and circumstances that might have been material to issues that might be raised by objections to the discharge forgot and scattered. The provisions of section 14 of the Bankruptcy Law that the application for a discharge shall be filed within one year after the adjudication, that if the bankrupt is unavoidably prevented from doing so it may be filed within the next six months, and that the judge shall hear the petition and the proofs in opposition to it at such time and place as will give parties in interest a reasonable opportunity to be heard, plainly indicate the purpose of Congress to secure an early hearing and disposition of the issues springing from such petitions. It is obvious that a wise and just administration of this law requires that such issues shall be framed and tried before the memory of the witnesses familiar with the transactions of the bankrupt at and shortly before the time of his adjudication has been dimmed by long delay and before they and the documentary evidence surrounding these transactions have been scattered or lost. The record in this case is so clear and compelling that the court is unable to resist the conclusion that the bankrupt failed to exercise that reasonable diligence in the prosecution of her claim for a discharge which is requisite to call a court of equity into action in her behalf."

Special emphasis is placed upon the dilatory tactics of petitioner in filing her petition for discharge in the first instance.

In re Lederer (D. C.) 125 F. 96, the court said: "I think it proper to add that it is not necessary for creditors to wait in any case as long as they have waited in this case. If the bankrupt files a petition for discharge, and then fails to carry on the proceedings with reasonable promptness, the court, upon a proper application, will dismiss the application for discharge for want of prosecution, and vacate all injunctions staying proceedings at law."

It does not appear that bankrupt therein offered any excuse for the delay which was for one year.

In re Overstreet (D. C.) 268 F. 987, periods of four and five years were involved; the former before action on petition for dis-

charge, and the latter before making application to revoke the order dismissing petition for discharge. Petition for discharge was filed March 23, 1910, and no action was taken thereon by bankrupt or counsel up to the time the latter died in 1912. An order was made dismissing petition July 14, 1914, apparently with no consideration having been given the matter by bankrupt until November 24, 1919, when a petition was presented asking that the order dismissing the petition for discharge be vacated. The excuse offered by bankrupt for the long delay was that the attorney representing him was taken ill in 1912, and, after a protracted illness, died the latter part of the year, and he did not hear of such death until 1916. In one part of his decision in the above case Judge Call stated:

"The excuse for the long delay in taking any action by the bankrupt is that the attorney representing him was taken ill in 1912, and after a protracted illness died in the latter part of that year; that he did not learn of such death until the year 1916. Thus, after the lapse of five years since the making of the order dismissing the petition for discharge, and nine years after the filing of the same, and specifications of objections to such discharge, this court is asked to vacate the order dismissing the application for discharge. I am inclined to think that the making of the order was error, and that, upon appeal, such order would have been reversed; but no such action was taken, nor was any application made to the court to vacate same after the bankrupt became aware of it, until the expiration of more than three years. It seems to me that the existence of such laches on the part of an involuntary bankrupt does not recommend the petition to the favorable consideration of the court, admitting for the moment—which I do not decide—that the court has the authority to go back five years and correct errors in proceedings in bankruptcy. Petition will therefore be denied."

In re Stone (D. C.) 172 F. 947, Judge Bean, of Oregon. held: "The law seems to be settled that the failure of a bankrupt to make a lawful application for his discharge within the time limit in section 14 of the Bankruptcy Act [11 USCA § 32] is, in effect, a judgment by default, in favor of his creditors, to the effect that he is not entitled to a discharge from their claims, and is as conclusive as a judgment upon a trial."

But certain material facts favorable to bankrupt are present in this case which do not appear in any of the foregoing decisions. These distinguishing characteristics are clearly observable in reading the various cases cited as bearing on the subject,

In re Cage Cotton Co. (D. C.) 32 F.(2d) 533, 534, petition for discharge was filed with referee in May, 1926, within the year, followed by an understanding between the referee and bankrupt that hearing would not occur until fall, as the latter expected to be absent from the country in the meantime. Upon his return bankrupt requested the referee several times to issue notices of hearing, but a delay occurred—petition had been mislaid by referee. About two years after filing petition referee found it and issued notices; prior to hearing motion was filed to dismiss petition for the reasons: (1) That the petition was never in fact filed, since it was filed with the referee and not with the clerk of the court; and (2) that, if properly filed, it should be dismissed for laches in not prosecuting it.

The court held the petition for discharge properly filed with the referee, and further: "Upon the second point it seems to me that neither reason nor authority sustain the movants. While there might of course be extreme cases in which the bankrupt could be charged with failure to press the petition for discharge, such as instanced in Re Lederer (D. C.) 125 F. 96, and Lindeke v. Converse (C. C. A.) 198 F. 618, in which the court's discretion should be exercised to dismiss the petition, such cases must be extreme in their facts to require such action, and such facts are wholly wanting here. This is a case for the exercise of discretion the other way. Re Reisler (C. C. A.) 278 F. 618; Re Neal (D. C.) 270 F. 289; Re Glasberg (C. C. A.) 197 F. 896; Bank of Elberton v. Swift, 275 F. 834 (C. C. A. 5th Cir.); Orcutt Co. v. Green, 204 U. S. 96, 27 S. Ct. 195, 51 L. Ed. 390. This case being one in which no creditor shows any prejudice whatever by the delay, or any reason whatever for the refusal of the discharge, the proper exercise of the court's discretion requires, not that the motion to dismiss be granted and the discharge denied, but the converse, that the motion to dismiss be denied and the discharge granted, and it will be so ordered."

The court has come to the conclusion in the present case expressed in the concluding lines of the foregoing quotation. Whatever neglect may be attributable to bankrupt should be excused. He had a right to rely upon the positive assurances of his counsel, who is an officer of this court. As soon as bankrupt learned otherwise, he acted without

delay. Other allegations contained in the motion are not sustained.

The motion to dismiss the petition for discharge is denied, and the petition granted. Mazur v. Hirsch Shoe Co. (C. C. A.) 46 F. (2d) 973; In re Edwards (D. C.) 4 F.(2d) 148.