KELLOGG SWITCHBOARD & SUPPLY CO. v. DEAN ELECTRIC CO. et al.

(District Court, N. D. Ohio, E. D.    November 2, 1915.)

No. 12.

PATENTS &⇒328—INFRINGEMENT—HARMONIC SELECTIVE SIGNALING SYSTEM—SUIT FOR INFRINGEMENT—LACHES.

    The Dean patent, No. 779,533, for a harmonic selective signaling system, for use in the operating of party line telephones, *held* not infringed. Complainant also *held* barred from the right to relief by laches in failing to diligently prosecute the suit.

In Equity. Suit by the Kellogg Switchboard & Supply Company against the Dean Electric Company and others. On final hearing. Decree for defendants.

&⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Curtis B. Camp and Jones, Addington, Ames & Seibold, all of Chicago, Ill., for plaintiff.

F. O. Richey, of Elyria, Ohio, M. B. & H. H. Johnson, of Cleveland, Ohio, and Charles A. Brown, of Chicago, Ill., for defendants.

CLARKE, District Judge. This is a suit in which infringement is claimed of United States letters patent No. 779,533, applied for June 14, 1903, and issued to the plaintiff, as assignee of William W. Dean, on January 10, 1905. A preliminary and final injunction and an accounting are prayed for.

The bill in this suit was filed on March 23, 1906. The answer was filed on June 5, 1906, and then there was nothing filed in the case until May 11, 1907—almost a year. Again nothing was done in the case from October 1, 1907, to March 15, 1909, a period of almost one year and six months. Depositions were filed in March, 1909, and in rebuttal in April, 1909, and then nothing more was filed until December 18, 1912. The case has hung along, more dead than alive, ever since.

It is obvious that a chancellor should not weigh in golden scales the claims of a plaintiff who has thus slept upon such rights as it may have had. Equity aids the vigilant, but it leaves the slothful where it finds them—where they have voluntarily placed themselves. The Supreme Court has said:

"It has been frequently held that the mere institution of a suit does not of itself relieve a person * * * of laches, and that, if he fail in the diligent prosecution of the action, the consequences are the same as though no action had been begun." Johnston v. Standard Mining Co., 148 U. S. 370, 13 Sup. Ct. 589, 37 L. Ed. 480, approved in terms Willard v. Wood, 164 U. S. 525, 17 Sup. Ct. 176, 41 L. Ed. 531.

And laches is a defense which can be made without any pleading to support it. The Supreme Court, in a case often cited with approval, says:

"If the case, as it appears at the hearing, is liable to the objection by reason of the laches of the complainants, the court will, upon that ground, be passive, and refuse relief. * * * Nothing can call forth this court into activity, but conscience, good faith, and reasonable diligence. Where these are wanting, the court is passive, and does nothing. Laches and neglect are always discountenanced; and therefore, from the beginning of this jurisdiction, there was always a limitation to suits in this court." Sullivan v. Portland, etc., R. R. Co., 94 U. S. 806, 24 L. Ed. 324.

If it were necessary to reach a just decision of this case, this court would not hesitate to decide that the plaintiff has shown such utter lack of diligence in the prosecution of its claims in this suit that it deserves in a court of equity neither the remedy of an injunction nor of an accounting. It is significant that the preliminary injunction prayed for in the bill was never applied for. But it is not necessary to place the decision of the court on this ground alone.

The patent in suit is an elaborately detailed one, making 19 separate claims of invention, 6 of which, viz., claims No. 1, No. 3, No. 5, No. 17, No. 18, and No. 19 are claimed to be infringed by the defendant. The patent is for a combination of well-known elements, and relates

to claimed improvements in a harmonic selective signaling system, which finds its most important use in the operation of party line telephones. It is not necessary in this opinion to go at length into the theory upon which harmonic selective ringing of bells proceeds; it is all elaborately worked out and clearly stated in the Currier and Lighthipe patents, hereinafter referred to, and all issued long prior to the filing of the application for the patent in suit.

All of the elements of the combination claimed in the patent in suit were, as we have said, well known and fully understood when the application for the patent was filed, and all of them had been used in the same combination to produce the same result, though perhaps not so successfully as the plaintiff accomplished it. Clear proof of this is to be found in letters patent No. 246,374, dated August 30, 1881, in letters patent No. 251,097, dated December 20, 1881, and in letters patent No. 425,594, dated April 15, 1890, all issued to J. B. Currier; in letters patent No. 451,414, dated April 28, 1891, issued to A. Storer; and in letters patent No. 550,982, dated December 10, 1895, issued to J. A. Lighthipe. To these should be added letters patent No. 449,106, dated March 31, 1891, issued to the American Bell Telephone Company, assignee of John J. Carty.

A detailed discussion of the state of the art prior to the application for the patent in suit would involve an opinion of very great length, and we shall therefore not attempt any such discussion. It is enough to say that a reading of the Currier and Lighthipe patents, hereinbefore referred to, makes it convincingly clear that both of these men understood the theory and principle upon which Dean proceeded in working out the harmonic selective signaling system which he sought to cover by the patent in suit. That the Currier and Lighthipe systems were extensively used in actual practice for a long time there can be no doubt. It seems, however, that they were not as satisfactory in the actual working as the Dean system, covered by the patent in suit, proved to be, and that at the time Dean's patent was granted, for one reason or another, they had substantially fallen into disuse.

Counsel for the plaintiff argue this case as if the patent in suit were a patent on an improved form of reed or bell ringer, used in combination with an improved form of polarized bell, in such manner that the reed is constantly under the control of the ringing currents, thereby producing new and useful results. However, the claims relied on in the patent make no claim to any special construction of a reed tongue or bell ringer, or of a polarized bell, but, on the contrary, the feature of novelty which is alleged in each of these claims seems to consist in a reed tongue so tuned that the operative rates of actuation of the bells shall be "the natural rates of vibration of the reed tongues, as modified by the action of the gongs of the bells in being struck."

. The language just quoted is from the first claim of the patent, but it is repeated in terms in the third, fifth, and seventh claims, and in substance in the seventeenth, eighteenth, and nineteenth claims, and the claim to novelty seems to lie wholly in the supposed discovery that the natural rate of vibration of the reed tongue differs from the operative rate, and that successful operation of the system depends

upon giving to the reed tongues, not their natural rate of vibration, but the higher rate which results from the modification of the natural rate due to striking upon the signal bell or gong. That this was what Dean thought he had discovered seems clear from the declaration of his specification that:

"It is practically impossible to operate a tuned bell * * * by means of an alternating current of a frequency or pitch corresponding to the pitch or natural rate of vibration of the tuned reed forming the tongue of the bell."

That this "operative or resultant" rate of vibration of the reed is higher than the unmodified natural rate was declared by Currier and Lighthipe, who both recognized that the striking of the tongue on the bell tended to accelerate the speed of its vibration, and this is stated as a fact by Dean in claims No. 2 and No. 4 of the patent in suit, saying that:

The "operative rates of actuation of the bells is [being] higher than the natural rates of vibration of the reed tongues."

Assuming that the tuning of the reeds to the operative rate of vibration was the essence of what Dean thought he had discovered, it is sufficient for the decision of this case to say that the system manufactured by the defendant does not depend for its successful operation upon the tuning of the reed tongues of the bells to an operative rate higher than their natural rate of vibration, but that, on the contrary, the operative rate of actuation of the bell in the defendant's system is proved to be the natural rate of vibration of the reed tongues, unmodified by the action of the signal bell when it is struck. That in the defendant's system the reed tongues are actually operated in practice at their natural rate of vibration seems clearly enough established by the testimony in this record.

It was perfectly understood by both Currier and Lighthipe that one of the chief difficulties in securing a practical harmonic selective signaling system consisted in the adjusting of the rate of vibration of the reed tongue so that it would vibrate in synchronism with the actuating current, and since the rate of vibration could be modified at will by using movable weights on the reed, as was sometimes done, or by varying the weight of the hammer, or by varying the flexibility of the tongues, it would seem that the solution of the problem of arriving at a construction of the reed tongues, which would eliminate that difficulty, was to be found in the course of very simple experiments, not rising to the dignity of invention.

The testimony in this case, while conflicting, as is usual in such cases, seems to establish clearly enough that in the patent in suit a rate of vibration of the reed was found which in practice worked more satisfactorily than what had gone before, and that in the system used by the defendant a different rate, namely, the natural rate of vibration of the reed, was found equally practicable when used in the combination of elements adopted by the defendant. It should be said, also, that it is open to very serious doubt whether the superiority in the operation of the system of the patent in suit over the Currier and Lighthipe systems was not due to improvements in the current generating and other appliances used in operating the system, which had

gradually developed during the 24 years which elapsed between the issuing of the Currier patents and the patent in suit, and during the 10 years which elapsed between the issuing of the Lighthipe patent and the patent in suit, rather than to any improvement springing from the combination described in that patent. Those were years of great advance and refinement in the development of electrical appliances of all kinds, and especially of such as it was necessary to use in the operation of such a system of signaling as is under discussion in this case.

The long years that this case has been hanging about the courts have resulted in the accumulation of a mass of conflicting testimony and theories, especially of expert testimony and theories (for the plaintiff, 447 pages, Smythe in 1907, 110 pages, and Dunbar in 1911, 337 pages; and for the defendant, Miller and Slough, 216 pages, in 1908), respecting what seems to be a very simple matter, when the development of the art shown in the patents of Currier and Lighthipe had once been attained. The advance which the patent in suit made, if it made any advance, on what had gone before, seems to this court of such character that the work of Dean with respect to the patent in suit consisted rather "in inventing a patent than in patenting an invention," and therefore, if the patent is allowed to stand at all, it should not be given a scope beyond the precise letter of its claims.

The result of this discussion of the case is that because of the laches of the plaintiff, and also for the reason that the construction of the defendant does not infringe the patent in suit, the bill will be dismissed, and the defendant will recover its costs.