KELLOGG SWITCHBOARD & SUPPLY CO. v. DEAN ELECTRIC CO.

(Circuit Court of Appeals, Sixth Circuit.    January 7, 1919.)

No. 3011.

1. PATENTS &⫯328—HARMONIC CALLING MEANS IN TELEPHONE SYSTEMS—INFRINGEMENT.
    The Dean patent, No. 779,533, for improvements in harmonic calling means for use in party line telephone systems, *held* not infringed.

2. PATENTS &⫯149—CLAIMS TOO BROAD—RELIEF ON FILING DISCLAIMER.
    The owner of a patent, if it be held in his suit for infringement that the claims in suit are too broad, cannot be given relief on filing necessary disclaimer in the Patent Office, where, if limited to the application of the three first features in the patent relied upon by plaintiff, another feature not employed by defendant's device would still remain, while, if made to include a construction of the claims in accordance with plaintiff's interpretation of the distinguishing fourth feature, relief would be inequitable as converting into infringement acts otherwise innocent.

Appeal from the District Court of the United States for the Northern District of Ohio; John H. Clarke, Judge.

Suit in equity by the Kellogg Switchboard & Supply Company against the Dean Electric Company. From a decree for defendant (231 Fed. 197), plaintiff appeals. Affirmed.

W. Clyde Jones, of Chicago, Ill., for appellant.

F. O. Richey, of Elyria, Ohio, and Charles A. Brown, of Chicago, Ill., for appellee.

Before WARRINGTON, KNAPPEN, and DENISON, Circuit Judges.

PER CURIAM. Suit for infringement of patent No. 779,533, January 10, 1905, to Dean, for improvements in harmonic selective calling means for use in party line telephone systems.

[1] In the calling device of the patent there is located between extensions of the ends of an electro-magnet (whose rear end is adjacent to one end of a permanent magnet) an armatured bell reed, whose rear end is held adjacent to the other end of the permanent magnet, whereby the bell is "polarized," the reed being held at rest in neutral position until an alternating current, selected at the central station, and of a frequency harmonizing with the rate of vibration of the subscriber's bell-reed, is impressed on the electro-magnet, whereupon the reed is made to vibrate alternately in opposite directions between the pole pieces of the electro-magnet, causing the hammer on the outer end of the reed to strike the gong; the other bells on the party line [none of which are in harmony with the selected rate of current frequency] being unaffected. In practice, four different rates of current frequency are used, viz. $16\frac{2}{3}$, $33\frac{1}{3}$, 50 and $66\frac{2}{3}$, per second.

Judge (now Mr. Justice) Clarke, who presided below, dismissed the bill for laches in prosecution and for lack of infringement. In reaching the conclusion of noninfringement, Judge Clarke found that there was nothing new in the idea of Dean's harmonic selective signaling system; that all the elements of the combinations of the various claims in suit had been before used in the same combination, to produce the same result (though perhaps not so successfully as the plaintiff accomplished it); that the patent, if valid, should not be given a scope beyond the letter of the claims in suit, which, as held by the court, do not call for any special construction of reed tongue or polarized bell, each, however, containing as a supposed element of novelty, a so-called "undertune" feature, whereby the reeds are so adjusted as to be operated by a current of alternating frequency, corresponding, not to the natural rate of vibration (or pitch) of the reed, but to its rate as accelerated by the reflex action of the gong when struck; and that defendant does not employ the "undertune" feature—the operative rate of actuation of its bell being the natural rate of vibration of the reed tongue, unmodified by the action of the gong. 231 Fed. 197.

The features of novelty and invention which plaintiff contends are found in the elements of the combinations of the various claims in suit (Nos. 1, 3, 5, 17, 18 and 19) are (1) a reed tongue vibrating as a whole and not in nodes; (2) a hammer resiliently mounted, capable of a certain limited freedom of movement with respect to the reed tongue; (3) the latter being positively actuated by the electro-magnet in both

directions, to secure vibrations in practical synchronism with the ringing current; and (4) the latter having a rate of frequency sufficiently close to the natural rate of vibration of the reed to start the bell ringing, and sufficiently close to the accelerated rate occasioned by the kick-back of the gong to keep the bell operating—this flexibility of the impressed current rate being styled the "operative range." Plaintiff specifically rejects the "undertune" theory.

Passing the question of laches in prosecution (especially in view of the stipulation of counsel dropping the case from the trial calendar subject to reinstatement), we agree entirely with Judge Clarke's conclusion of noninfringement. There was nothing new in the idea of a harmonic, selective, alternating calling system, nor in the use of the polarized bell in connection therewith, whereby the bell reed was positivey actuated by the electro-magnet in both directions, and for the purpose claimed by plaintiff for its reed. Although such bells of the prior art did not prove satisfactory, and were discontinued after several years commercial use, they do not impress us as merely abandoned experiments. In the case of one or more of them the rigidity of the reed tongue perhaps contributed largely to lack of success. But the court below rightly found that the claims in suit did not call for any special construction of reed tongue or of polarized bell; for, while the specification describes a construction of the reed apparently capable of producing, and intended to produce, the results plaintiff claims for it, the claims call for the reed tongue only as "tuned," which has no relation to form. That the claims were not intended to cover the form of the reeds is further shown by the inclusion in a patent to Dean, applied for contemporaneously with the application for the patent in suit (and issued later), of several claims upon the specific form of a reed, corresponding to that described in the patent before us, and intended to accomplish the results plaintiff claims for that reed. Not only do none of the claims in suit call for a "polarized bell," except in that language alone, but the specification describes the bells as "polarized by permanent magnets, as in an ordinary alternating current bell." There is thus no room for the application of the rule that reference may be made to the specification to ascertain the characterizing features of an element described in the claims only generally and indefinitely.

We also agree with Judge Clarke that a characteristic element of each of the claims in suit is the "undertune" feature. Their language is:

"Means at the central office for impressing upon the line ringing current of frequencies *corresponding* to such operative rates of the bells and *sufficiently close to* the natural rates of the tongues to start the same vibrating." Some of the claims add, "from a state of rest."

The specification, after stating that the ringing current rates applied have "frequencies corresponding to the operative rates of vibration of the reed tongues," describes those operative rates as "the resultant of the natural pitch of the reed, as modified by the weight of the hammer or ball, the armature, and the action of the bell gong when it is struck," and as higher than the natural rate. The fact that the cur-

rent frequencies need only be "sufficiently close" to the *operative* rate of reed vibration "to successfully operate the bells," and "sufficiently close to" their *natural* vibration "to start them vibrating when current is first impressed upon the line," does not overcome the otherwise plain requirement that the current frequency rate must be substantially higher than the natural pitch of the reed, and must correspond with its operative rate of vibration—making due allowance for "operative range."

All doubt on the subject is removed by the oral testimony of the expert who assisted Dean in working out the application for the patent in suit, to the effect that it was then recognized that the only novel element of the claims was the "undertune" feature, although this feature is said to have turned out not to be novel in fact. The device of the patent in suit is doubtless superior to any prior selective, harmonic system; but the patent is not of a primary character, nor is its permissible range of equivalents broad enough to include defendant's structure.

It is persuasively shown that defendant's system, which is operated under a later patent to Dean, does not use the "untertuned" reed of the patent in suit, in which the impressed current corresponds not to the natural pitch of the reed, but to its rate as increased by the action of the gong, but uses an "in-tuned" reed—that is to say, one designed to vibrate at its natural rate, and thus most efficiently, under a current frequency corresponding to that natural rate, such rate not being accelerated by striking the gong. That its bell, like plaintiff's will actually operate under a current ranging from a few cycles below to a few cycles above the selected and most efficient current rate does not make to the contrary.

We do not understand the proof to show that defendant has constructed or sold bells which depend for their successful operation upon the use of an "undertuned" reed. We are content to rest our affirmance of the decree upon the opinion of Judge Clarke, supplemented by what we have said.

[2] Plaintiff, however, asks here that, if it be held that the claims in suit are too broad, it be given relief on filing necessary disclaimer in the Patent Office. We cannot accede to this request. If limited in application to the first three features before enumerated as relied upon by plaintiff, the undertune feature would still remain. If made to include a construction of the claims in accordance with plaintiff's interpretation of the distinguishing fourth feature (the "operative range" theory), such relief would be inequitable, as converting into an infringement acts otherwise innocent, because based upon a natural and correct interpretation of the claims as written, especially in view of the proof that the patentee intended them to be so interpreted. This would be to broaden, not to narrow, the claim.

The decree of the District Court is affirmed.