Taranto, Circuit Judge, concurring.
I join the panel's opinion in full. Here I add a few thoughts on why I am unpersuaded by the key rationales set forth in the dissent from the court's en banc holding.
The en banc issue is governed by statutory language that, as the panel opinion explains, is plain in its meaning. In September 2001, Ingenio (then called Keen) was served with a complaint asserting that it infringed the '836 patent, and there is no dispute about the content of the complaint or the propriety of service. In 2013, Ingenio filed a petition for an inter partes review (IPR)-far more than one year after the 2001 service. With respect to the en banc issue, those facts make § 315(b)'s time bar applicable by its plain terms. Nothing in that language makes relevant whether the 2001 complaint was eventually dismissed voluntarily without prejudice; the fact that service occurred does not change when the complaint (or action) is later dismissed, whether voluntarily or otherwise, and whether with or without prejudice to the right to file another action on the same claims. No other provision of the statute calls for a different conclusion. Indeed, whereas Congress in § 315(a)(2)(C) specifically addressed the effect of a voluntary dismissal of an IPR petitioner's own district court complaint challenging a patent, Congress left § 315(b) unmodified by any language addressed to dismissals of patentees' complaints.
This is not a case where the scope of a word or phrase in the statute, considered alone and in context, "may be open to competing interpretations" as in Kasten v. Saint-Gobain Performance Plastics Corp. , 563 U.S. 1, 7, 131 S.Ct. 1325, 179 L.Ed.2d 379 (2011), and Dolan v. U.S. Postal Service , 546 U.S. 481, 486, 126 S.Ct. 1252, 163 L.Ed.2d 1079 (2006). In Kasten , the Court addressed a genuine textual issue about whether the phrase "filed any complaint" in 29 U.S.C. § 215(a)(3) encompasses an oral complaint or instead requires a writing. 563 U.S. at 7, 131 S.Ct. 1325. In Dolan , the Court addressed a genuine textual issue about whether the phrase "negligent transmission" of the mail, when read in the context of the statute, encompassed what might be the last act of the transmission-a negligent placement of a package on a porch. 546 U.S. at 486, 126 S.Ct. 1252.
Numerous authorities state that statutory language as plain in its meaning as to an issue as is § 315(b), when read alone and in context, is controlling on that issue, subject to very narrow exceptions. See , e.g. , SAS Inst. Inc. v. Iancu , --- U.S. ----, 138 S.Ct. 1348, 1357, 200 L.Ed.2d 695 (2018) ("We need not and will not invent an atextual explanation for Congress's drafting choices when the statute's own terms supply an answer. See United States v. Ron Pair Enterprises, Inc. , 489 U.S. 235, 240-41, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989) ('[A]s long as the statutory scheme is coherent and consistent, there generally is no need for a court to inquire beyond the plain language of the statute')." (alteration in original) (unofficial reporter citations omitted) ); Cyan, Inc. v. Beaver Cty. Employees Ret. Fund , --- U.S. ----, 138 S.Ct. 1061, 1072, 200 L.Ed.2d 332 (2018) ("Even assuming clear text can ever give way to purpose, [the Director] would need some monster arguments on this score to create doubts about [ § 315(b)'s] meaning."); Star Athletica, L.L.C. v. Varsity Brands, Inc. , --- U.S. ----, 137 S.Ct. 1002, 1010, 197 L.Ed.2d 354 (2017) ; Sebelius v. Cloer , 569 U.S. 369, 381, 133 S.Ct. 1886, 185 L.Ed.2d 1003 (2013) ("when [a]
*1343 statute's language is plain, the sole function of the courts-at least where the disposition required by the text is not absurd-is to enforce it according to its terms") (alteration in original) (internal quotation marks omitted); Gross v. FBL Fin. Servs., Inc. , 557 U.S. 167, 175, 129 S.Ct. 2343, 174 L.Ed.2d 119 (2009) ; Barnhart v. Sigmon Coal Co. , 534 U.S. 438, 450, 122 S.Ct. 941, 151 L.Ed.2d 908 (2002) ; Board of Governors of Fed. Reserve Sys. v. Dimension Fin. Corp. , 474 U.S. 361, 368, 106 S.Ct. 681, 88 L.Ed.2d 691 (1986).
I see no basis strong enough to justify the proposed contrary-to-text result urged by the Director-that § 315(b) becomes inapplicable when the complaint whose service would otherwise bar the IPR was dismissed voluntarily without prejudice under Rule 41(a) of the Federal Rules of Civil Procedure. Respecting § 315(b)'s plain meaning leaves the statutory scheme "coherent and consistent," Barnhart , 534 U.S. at 450, 122 S.Ct. 941 ; Ron Pair Enters. , 489 U.S. at 240, 109 S.Ct. 1026, and without "absurd" results, Sebelius , 569 U.S. at 381, 133 S.Ct. 1886. I therefore agree that the Director's position must be rejected and the task of making any advisable adjustments left to Congress.
I
The principal rationale offered to support the Director's position is that a background rule of law exists that Congress must have intended to modify § 315(b)'s plain meaning. The asserted "rule" is that "[t]he effect of a voluntary dismissal without prejudice pursuant to Rule 41(a) is to render the proceedings a nullity and leave the parties as if the action had never been brought." Bonneville Assocs., Ltd. P'ship v. Barram , 165 F.3d 1360, 1364 (Fed. Cir. 1999) ( Bonneville II ) (alteration in original) (internal quotation marks omitted). This court has also stated the point in terms seemingly applicable even to an involuntary dismissal without prejudice. Graves v. Principi , 294 F.3d 1350, 1356-57 (Fed. Cir. 2002) ("[A]s a matter of law, once his appeal was dismissed-for whatever purpose and whether with or without prejudice-it was as if the appeal had never been filed. ... The dismissal of an action without prejudice leaves the parties as though the action had never been brought."). The Director invokes those formulations as providing a "solidly grounded rule" of civil procedure, Greenlaw v. United States , 554 U.S. 237, 250, 128 S.Ct. 2559, 171 L.Ed.2d 399 (2008), that Congress must have understood would override the contrary plain meaning of § 315(b) by nullifying the time-bar effect of service of a complaint if that complaint is later voluntarily dismissed without prejudice.
But this court has already observed that the cases articulating an "as if never brought" principle do not "address § 315(b) or whether service of a complaint can be nullified." Shaw Indus. Grp., Inc. v. Automated Creel Sys., Inc. , 817 F.3d 1293, 1301 (Fed. Cir. 2016). And even aside from the distinction between nullifying the effect of a complaint's service and nullifying the effect of a complaint's filing, the case law invoked by the Director (and the dissent) does not justify overriding the plain meaning of the § 315(b) bar.
The fundamental problem with the Director's position is that it takes judicial language used as explanation in particular contexts and mistakenly treats the language as establishing a rule sweeping enough to apply to the § 315(b) context. That is a mistake here because the federal courts do not always treat a voluntary, without-prejudice dismissal as leaving the dismissed action without legal effect. Only for some purposes does a voluntary, without-prejudice dismissal leave the dismissed action without legal effect, as if it had never been brought; for other purposes, the dismissed action continues to have legal *1344 effect. And the legal effect at issue for § 315(b) -triggering the start of a clock for filing an action-has never been in the first category. The Director has noted that he knows of no case holding that a voluntary, without-prejudice dismissal of a complaint nullifies the statutory effect of the filing of that complaint (or, here, of its service) of starting a clock on initiating another proceeding. Oral Arg. at 30:08-31:20. We cannot soundly infer a nontextual exception to § 315(b)'s plain-meaning application based on a nullification principle that has not been applied, and certainly is not established, in the clock-starting situation present here.
A
Some of this court's and other courts' cases deny certain legal effects to the filing of a complaint later voluntarily dismissed without prejudice. One such effect concerns what is needed to satisfy (or toll) a time limit on initiating an action or appeal. The rationale is simple. A particular case or appeal must itself be initiated within a prescribed time. A filing that initiated an earlier case or appeal, if voluntarily dismissed without prejudice, does not meet, or toll the running of the clock for meeting, the time limit for filing the document that initiates the later (even substantively identical) case.
This court so held in Bonneville II , a government-contract dispute in which Bonneville timely appealed to the General Services Administration Board of Contract Appeals; voluntarily dismissed that appeal to pursue relief in the Claims Court instead; was denied a forum for lack of jurisdiction there (as this court held in Bonneville Assocs. v. United States, 43 F.3d 649, 655 (Fed. Cir. 1994) ( Bonneville I ) ); and then returned to the Board by filing a new appeal. This court in Bonneville II held that the new appeal was untimely because the earlier Board appeal did not count to meet the applicable time limit for an appeal to the Board. 165 F.3d at 1363-65. In the same vein, we held in Graves that the time limit for appealing to the Veterans Court, 38 U.S.C. § 7266(a), had to be met by the notice of appeal initiating that appeal, and could not be met by an earlier, voluntarily dismissed notice of appeal from the same Board of Veterans' Appeals decision. 294 F.3d at 1355-56. Other circuits' decisions are to the same effect in not allowing the satisfaction, or tolling, of a limitations period by an earlier filing that is voluntarily dismissed without prejudice.[1]
*1345 But the § 315(b) en banc issue does not involve the legal effect of the type at issue in the cases just described. A legal effect of that type would be at issue if an IPR petitioner filed a petition within the one-year period, voluntarily dismissed the petition without prejudice, then filed another IPR petition outside the period: the earlier (timely) petition would be disregarded in assessing the timeliness of the later petition. Here, there were no successive IPR petitions, and the issue is not whether a voluntarily dismissed filing could be treated as satisfying the one-year rule.
Rather, the issue is whether the 2001 service of a complaint asserting that Ingenio infringed the '836 patent should be treated as losing its clock-starting legal effect for filing an IPR before the Board, just because the properly served complaint was later voluntarily dismissed without prejudice. None of the just-cited cases involved that legal effect. Indeed, while those cases insist on enforcing a time limit on initiating legal proceedings for the same or similar claims brought by the same party in (usually) the same forum, the Director's position here would have the opposite effect of nullifying a time limit-and doing so based on the filing of different claims (invalidity, not infringement) by a different party (accused infringer, not patent owner) in a different forum (Board, not district court). In multiple ways, then, the main line of authority invoking the "as if never brought" rationale does not apply to the circumstances addressed by § 315(b).
The clock-starting effect that is at issue here is also different from certain other legal effects that are denied to a complaint once it has been voluntarily dismissed without prejudice. Notably, once a complaint has been voluntarily dismissed without prejudice, most further action in the very case initiated by that complaint is neither required nor permitted.[2] Relatedly, as indicated by the "without prejudice" language, invocation of issue or claim preclusion is generally not available based on the action that was voluntarily dismissed without prejudice.[3] Those legal effects are *1346 not what is at stake here.
B
As just set forth, although a voluntary, without-prejudice dismissal has been held to eliminate some legal effects of a dismissed action, the clock-starting effect of § 315(b) is not among them. Nor does the law recognize a universal nullification rule that such a dismissal eliminates all legal effects of a dismissed action. To the contrary, in various circumstances, such a dismissed action has continuing legal effects, i.e. , is not treated as if it had never been brought.
For example, Rule 41 itself makes clear that a first voluntary dismissal has an effect in forbidding a without-prejudice dismissal of a second action "based on or including the same claim." Fed. R. Civ. P. 41(a)(1)(B). Rule 41 adds that a first such dismissal may give rise to a court-imposed requirement that the costs of the first action be paid as a precondition to litigation of a second action based on or including the same claim against the same defendant. Fed. R. Civ. P. 41(d). And a voluntary, without-prejudice dismissal may give rise to costs and fees under Rule 11. See Wright & Miller, §§ 1336, 2367.
Continuing effects are also evident in sources outside the Federal Rules of Civil Procedure. For example, as the Director appears to acknowledge, the filing of a patent infringement complaint, even if later voluntarily dismissed, can play a role, even a definitive role, in proving the defendant's knowledge of the patent if the defendant is later charged with willful infringement. Intervenor's Second Supp. Br. 8 ("[D]ismissing a complaint without prejudice could have ongoing legal consequences because, for example, the notice turns a defendant's unwitting actions into intentional ones."); see also Fed. R. Evid. 201(b)(2) (allowing judicial notice of facts from "sources whose accuracy cannot reasonably be questioned"). And as the panel opinion notes, the filing of such a complaint, though later voluntarily dismissed, has formed the basis for declaratory judgment jurisdiction where the initial defendant later brings a validity challenge: the initial action by the patentee may establish the necessary case or controversy for the later action. See TransWeb, LLC v. 3M Innovative Props. Co. , 812 F.3d 1295, 1300 (Fed. Cir. 2016).
Another continuing effect is evident in the context of 28 U.S.C. § 1500. The Supreme Court in Keene Corp. v. United States addressed the § 1500 bar on the Court of Federal Claims's jurisdiction over a case when, at the time of its filing, a sufficiently related action is pending in another court, and the Court held that the bar continues to apply even after the other court action has been voluntarily dismissed without prejudice. 508 U.S. 200, 203, 207-09, 113 S.Ct. 2035, 124 L.Ed.2d 118 (1993) ; see *1347 Brief for the United States, Keene Corp. v. United States , No. 92-166, 1993 WL 290106, at *3 (filed Jan. 25, 1993). The other court action, though voluntarily dismissed without prejudice, is not treated in that context as if it had never been brought.
Similarly, in Flowers v. Secretary of the Department of Health and Human Services , which involved a Vaccine Act provision barring certain benefits if a plaintiff had certain related actions pending, this court held that the bar applied even after the other actions were voluntarily dismissed without prejudice. 49 F.3d 1558, 1560-62 (Fed. Cir. 1995). The earlier actions were not treated as if never brought. And in Bonneville I , this court held that the Claims Court lacked jurisdiction over Bonneville's claim because Bonneville had initially brought an appeal to the Board and had therefore elected that forum-even though Bonneville had later obtained a voluntary, without-prejudice dismissal of its Board appeal. 43 F.3d at 651, 653-55. The earlier action, though it had been voluntarily dismissed without prejudice, blocked the Claims Court case-the opposite of being treated as if it had never been brought.
C
In short, the background law on the nullification effect of a voluntary, without-prejudice dismissal is a mixed bag, and it does not state a near-monolithic rule with only aberrational exceptions. Some effects are nullified, some not. More particularly, it is anything but established-in fact, the Director has acknowledged the absence of any authority holding-that such a dismissal nullifies the legal effect at issue here: a clock-starting effect prescribed by statute. In these circumstances, I conclude, there is no basis in the asserted background law for overriding the plain meaning of § 315(b).
II
When the Director moves beyond his argument about background law, he presents nothing to indicate a clear congressional intent contrary to the plain meaning. Legislative history indications of congressional policy at most establish that § 315(b) is generally based on an assessment of the period suitable for a formally accused infringer (or privies or real parties in interest) to shape any IPR petition after formally receiving notice of a patentee's charges of infringement, with the patentee and district courts thereafter given repose against IPR petitions filed by that accused infringer (or privies or real parties in interest). See 157 Cong. Rec. S5429 (daily ed. Sept. 8, 2011) (statement of Sen. Kyl) (stating that the " section 315(b) deadline afford[s] defendants a reasonable opportunity to identify and understand the patent claims that are relevant to the litigation"); H.R. Rep. No. 112-98, at 48 (2011), reprinted in 2011 U.S.C.C.A.N. 67, 78 (ex-pressing concern about use of IPR proceedings as a "tool[ ] for harassment" by "repeated litigation and administrative attacks"). Those policies do nothing to undermine the plain meaning of the text: a bright-line rule of one year from service is a sensible prescription for serving those purposes.[4]
*1348 The dissent suggests that, when an action is voluntarily dismissed without prejudice, "the accused infringer is led to think that the controversy has dissipated" and "the notice function of the filing is effectively eliminated." Dissent at 1354. Those suggestions, even if accepted on their own terms, do not establish the kind of incoherence or absurdity that would support adoption of an exception for voluntary dismissals without prejudice. Congress can sensibly choose a bright-line rule based on underlying notice concerns. In any event, the suggestions are, I think, weak on their own terms. The point of a dismissal "without prejudice" is to preserve, rather than eliminate, the ability of the plaintiff to sue the defendant again on the same claim. No defendant, if not given something more, such as a covenant not to sue, can reasonably understand a without-prejudice dismissal to give repose as to future assertion of that very patent; no defendant in that situation is entitled "to think that the controversy has dissipated." Indeed, as already noted, the bringing of an infringement suit, even if later voluntarily dismissed, can play a role, even a decisive role, in establishing the case or controversy needed for the once-accused infringer to bring an action for a declaratory judgment.
The dissent and the Director (in the Luminara case to which the dissent refers) suggest another reason that the statutory purpose requires an exception to § 315(b) for service of a complaint that is later voluntarily dismissed without prejudice. Specifically, they suggest a possibility of manipulative abuse if § 315(b) is applied in accordance with its terms, without such an exception. Dissent at 1355-56; Oral Arg. at 19:45-20:22, Luminara Worldwide, LLC v. Iancu , Nos. 17-1629, -1631, -1633 (Fed Cir. Apr. 5, 2018). The scenario of abuse is this: A patent owner could sue many possible infringers, serve them with complaints, and then quickly and unilaterally dismiss all of those cases under Rule 41(a)(1)(A)(i), which applies before the filing of an answer or motion for summary judgment. Such a unilateral dismissal would start the one-year IPR clock for all such defendants under § 315(b), were there no exception. After the year had elapsed without any of those defendants filing an IPR challenge, the patent owner could again sue any of them on the same patent, without fear of an IPR initiation by any of them (or their privies or real parties in interest), though others could file IPR challenges.
This hypothesized scenario cannot support the suggested inference that Congress, to avoid such abuse, must have silently prescribed an exception to § 315(b) for voluntary dismissals without prejudice. Notably, the scenario is purely hypothetical, as far as we know. We have been pointed to no evidence that any patent owners have behaved in the way posited.
"[T]he Court rarely invokes [an absurd results] test to override unambiguous legislation." Barnhart v. SigmonCoal Co., Inc. , 534 U.S. 438, 459, 122 S.Ct. 941, 151 L.Ed.2d 908 (2002). The stringency of this test for overcoming plain meaning reflects a strong deference to the legislature as the instiution for identifying and curing defects in laws. See SAS , 138 S.Ct. at 1358 ("whatever its virtues or vices, Congress's prescribed policy here is clear"); Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 237-39 (2012) (explaining that "error-correction for absurdity can be a slippery slope" and that the absurdity doctrine should accordingly be narrow). I do not think that the merely hypothetical possibility of the abuse posited here makes the bright-line rule in § 315(b) absurd or incoherent. Cf. Silva-Hernandez v. U.S. Bureau of Citizenship & Immigration Servs. , 701 F.3d 356, 363-64 (11th Cir. 2012) (ruling that hypothetical scenarios did not show absurdity *1349 sufficient to reject a provision's plain meaning).
That is especially so because there are reasons to doubt the likely significance of the hypothesized scenario even beyond the fact that it has not yet shown up in reality. The scenario posits that the initially sued defendants, although already sued once on the patent, would decide to rely on the belief that they are substantially unlikely to be sued on it again-a premise that is dubious given that the initial dismissal was specifically without prejudice to the patentee's right to file again, there has been no covenant not to sue, and the posited legal stratagem for avoiding IPRs is apparent. Without such (doubtful) reliance, it is plausible that one or more of the defendants would initiate IPR challenges to the patent at issue within the one-year period, defeating the posited scheme of the patentee. The assumptions of legal ignorance, naiveté, or uniform fingers-crossed risk assessment seem strained.
The posited scenario also requires downplaying evident risks to the patentee of implementing the scheme. By suing many defendants in the first place, the patentee would be expanding the pool of persons objectively threatened by the patent, which would seem to increase the likelihood of an early IPR challenge and to lower the cost of an IPR for any individual defendant if the defendants file jointly. That risk to the patentee further diminishes the likelihood of the abuse scenario. So does the risk that the patentee would face sanctions-in the initial litigation or later litigation-for acting as posited in the scenario. See Chambers v. NASCO, Inc. , 501 U.S. 32, 46-47, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991) (explaining that inherent power "extends to a full range of litigation abuses"); Roadway Express, Inc. v. Piper , 447 U.S. 752, 766, 100 S.Ct. 2455, 65 L.Ed.2d 488 (1980) (discussing power to sanction the "willful[ ] abuse [of] judicial processes"); Willy v. Coastal Corp. , 503 U.S. 131, 136-37, 112 S.Ct. 1076, 117 L.Ed.2d 280 (1992) (discussing sanction power even where court lacked jurisdiction); Cooter & Gell v. Hartmarx Corp. , 496 U.S. 384, 395-96, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990) (post-dismissal sanction power); Winslow v. Hunter (In re Winslow) , 17 F.3d 314, 315 (10th Cir. 1994) (per curiam) (discussing sanctions for "a pattern of litigation activity which is manifestly abusive") (quoting Johnson v. Cowley , 872 F.2d 342, 344 (10th Cir. 1989) ).
Finally, and in any event, the hypothetical abuse scenario cannot support adoption of the particular judicial modification of § 315(b)'s plain terms proposed by the Director-which is a gross mismatch for the abuse scenario. The suggested exception to § 315(b) would go far beyond dismissals under Rule 41(a)(1)(A)(i), which are the only ones the plaintiff can effectuate unilaterally. The suggested exception would also cover voluntary, without-prejudice dismissals under Rule 41(a)(1)(A)(ii) -which are within the control of the defendant (later petitioner)-and under Rule 41(a)(2) -which are within the control of the court. Unilateral manipulation is not possible under those provisions: for all of those dismissals, the defendant and the court have power to protect against the posited abuse. (The present case involved a non-unilateral dismissal.) There is no basis for inferring, or adopting, a nontextual exception that extends far beyond a very limited scenario of merely hypothetical potential abuse.
* * *
In sum, I think that the statutory issue in this case falls within the principle that "where the language of an enactment is clear, and construction according to its terms does not lead to absurd or impracticable consequences, the words employed are to be taken as the final expression of the meaning intended."
*1350 United States v. Mo. Pac. R.R. Co. , 278 U.S. 269, 278, 49 S.Ct. 133, 73 L.Ed. 322 (1929). If there turns out to be a problem in the statute's application according to its plain meaning, it is up to Congress to address the problem.
Dyk, Circuit Judge, joined by Lourie, Circuit Judge, dissenting.
The en banc issue in this case is whether the time bar of 35 U.S.C. § 315(b) applies when a petitioner is served with a complaint more than one year before the petition for inter partes review ("IPR"), but the complaint is dismissed without prejudice. En banc consideration was occasioned by the fact that two different panels reached opposite conclusions on this issue in this case and in Luminara Worldwide, LLC, v. Matal , No. 17-1629 (Fed. Cir. filed Feb. 13, 2018). The en banc court now agrees with the Click-to-Call panel and holds that section 315(b) applies, even when the earlier complaint was dismissed without prejudice.[1] In our view, the use of traditional tools of statutory construction leads to a conclusion opposite to the en banc court.
Section 315(b) provides that "inter partes review may not be instituted if the petition requesting the proceeding is filed more than 1 year after the date on which the petitioner ... is served with a complaint alleging infringement of the patent." In our view, the Board's interpretation of the statute was correct, and section 315(b)'s time-bar should not apply when the underlying suit has been voluntarily dismissed without prejudice. We reach this conclusion for three reasons.
First, the panel opinion relies on the language of section 315(b) as being unambiguous, because, on its face, it does not exclude voluntary dismissals without prejudice. But, the meaning of "service of a complaint" is not on its face unambiguous. In closely comparable circumstances, the Supreme Court has held that it is necessary to look beyond the language, to the context and purpose of the statute. Kasten v. Saint-Gobain Performance Plastics Corp. , involved language in the Fair Labor and Standards Act (the "Act"). 563 U.S. 1, 7, 131 S.Ct. 1325, 179 L.Ed.2d 379 (2011). The Act's anti-retaliation section prevented employers from "discharg[ing] or in any other manner discriminat[ing] against any employee because such employee has filed any complaint ... under or related to [the Act]." 29 U.S.C. § 215(a)(3) (emphasis added). The issue was whether an oral complaint fit within the language "filed any complaint." Kasten , 563 U.S. at 7, 131 S.Ct. 1325. The Court concluded "the text, taken alone, cannot provide a conclusive answer to our interpretive question .... We must look further." Id . at 11, 131 S.Ct. 1325. The Court examined how the words had been used by "legislators, administrators, and judges," id . at 8, 131 S.Ct. 1325, and reviewed "contemporaneous judicial usage," id . at 9, 131 S.Ct. 1325. These sources helped the Court conclude that oral complaints should qualify, because "considering the provision in conjunction with the purpose and context [led the Court] to conclude that only one interpretation is permissible." Id. at 7, 131 S.Ct. 1325.
This situation is similar. In this context, the concept of service and filing seem to be equivalent. Section 315(b)'s phrase, "served with a complaint," is almost the same as the phrase "filed any complaint" at issue in Kasten . In Kasten , the issue was whether the complaint could include written and oral complaints, whereas the issue here is whether the complaint could *1351 include a complaint later voluntarily dismissed without prejudice. Both are situations where "[t]he definition of words in isolation," is not "necessarily controlling," or even clear in terms of ordinary meaning. Dolan v. U.S. Postal Serv. , 546 U.S. 481, 486, 126 S.Ct. 1252, 163 L.Ed.2d 1079 (2006). Rather, "[i]nterpretation of [the] word or phrase depends upon reading the whole statutory text, considering the purpose and context of the statute, and consulting any precedents or authorities that inform the analysis." Id. ; see also FDA v. Brown & Williamson Tobacco Corp., 529 U.S. 120, 132, 120 S.Ct. 1291, 146 L.Ed.2d 121 (2000) ("In determining whether Congress has specifically addressed the question at issue, a reviewing court should not confine itself to examining a particular statutory provision in isolation. The meaning-or ambiguity-of certain words or phrases may only become evident when placed in context.").
Second, a well-established background principle supports the PTO's reading of the statute. Courts have typically treated voluntary dismissals without prejudice as restoring the parties to the situation that existed before the case had ever been brought. In Bonneville Assocs. v. Barram , 165 F.3d 1360, 1362-64 (Fed. Cir. 1999), an appeal to the General Services Administration Board of Contract Appeals had been voluntarily dismissed, and the question was whether the requirement of timely filing had been satisfied by the dismissed appeal. This made it necessary to "determine the effect of the voluntary dismissal of Bonneville's appeal without prejudice." Id . at 1364. Our court recognized that "[t]he rule in the federal courts is that '[t]he effect of a voluntary dismissal without prejudice pursuant to Rule 41(a)"is to render the proceedings a nullity and leave the parties as if the action had never been brought." ' " Id . (second alteration in original) (quoting Williams v. Clarke , 82 F.3d 270, 273 (8th Cir. 1996) ). Thus, dismissal "leaves the situation as if the suit had never been brought." Id. at 1363.
Similarly, in Graves v. Principi , 294 F.3d 1350, 1355-56 (Fed. Cir. 2002), we held that filing an appeal in Veterans Court did not toll the 120-day period for appeals from the decision of the Board of Veteran's Appeals, when the appeal was voluntarily dismissed without prejudice. We held that "as a matter of law, once [the veteran's] appeal was dismissed ... it was as if the appeal had never been filed." Id. We explained that the
dismissal of his initial appeal meant that Mr. Graves was barred from appealing the January 18, 1998 decision of the Board .... because, in light of the dismissal, he was in the same situation that he would have been in if he had never filed a notice of appeal, and by June 18, 1998, the date of the dismissal, the 120-day period under section 7266(a) for filing a notice of appeal had passed.
Id . at 1356. We reiterated that "[t]he dismissal of an action without prejudice leaves the parties as though the action had never been brought." Id .
Other circuits have likewise treated dismissals without prejudice as restoring the parties to the exact situation as if the original complaint had never been filed. See, e.g. , Norman v. Ark. Dep't of Educ ., 79 F.3d 748, 751 (8th Cir. 1996) ("[T]he 'effect of a voluntary dismissal without prejudice is to render the proceedings a nullity and leave the parties as if the action had never been brought.' " (quoting In re Piper Aircraft Distrib. Sys. Antitrust Litig. , 551 F.2d 213, 219 (8th Cir. 1997) ) ).[2] The understanding that dismissal *1352 without prejudice renders the original filing a "nullity" and restores the parties to the situation that would have prevailed if the original complaint had never been filed is supported by the leading federal practice treatise. See 9 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRAC. AND PROC. § 2367 (3d. ed. 2018) ("[A]s numerous federal courts have made clear, a voluntary dismissal without prejudice ... leaves the situation as if the action never had been filed.").
This rule has been applied in the closely comparable situation where a complaint dismissed without prejudice is held not to toll the statute of limitations, absent some evidence of a contrary legislative intent. See Willard v. Wood , 164 U.S. 502, 523, 17 S.Ct. 176, 41 L.Ed. 531 (1896) ("The general rule in respect of limitations must also be borne in mind, that if a plaintiff mistakes his remedy, in the absence of any statutory provision saving his rights, or where, from any cause, a plaintiff becomes nonsuit, or the action abates or is dismissed, and, during the pendency of the action, the limitation runs, the remedy is barred."); Jorge v. Rumsfeld , 404 F.3d 556, 563 (1st Cir. 2005) ("[A] prescriptive period is not tolled by filing a complaint that is subsequently dismissed without prejudice."); Garfield v. J.C. Nichols Real Estate , 57 F.3d 662, 666 (8th Cir. 1995) ("A dismissal without prejudice does not toll a statute of limitation."); Robinson v. Willow Glen Acad. , 895 F.2d 1168, 1169 (7th Cir. 1990) (holding that a tolling provision triggered by the "commencement of an action" did not apply where a complaint was filed but was later voluntarily dismissed); Davis v. Smith's Transfer, Inc. , 841 F.2d 139, 140 (6th Cir. 1988) (per curiam) ("The initial filing of plaintiff's suit within the six-month time period is simply not the effective filing date of plaintiff's suit because it was later dismissed by the plaintiff under Fed. R. Civ. P. 41(a). A suit, so dismissed, does not toll nor effect in any way the continuous running of the applicable statutory time period."); Dupree v. Jefferson , 666 F.2d 606, 611 (D.C. Cir. 1981) ("We conclude, then, that the rule against tolling ... applies with equal force to nonprejudicial dismissals, be they voluntary or involuntary."); Curtis v. United Transp. Union , 648 F.2d 492, 495 (8th Cir. 1981) ("It is our view that Rule 54(b) does not provide an exception in this case to the rule that the entry of a voluntary dismissal without prejudice leaves the action as if suit had never been brought for purposes of the statute of limitations."); Bomer v. Ribicoff , 304 F.2d 427, 429 (6th Cir. 1962) ("In the absence of a statute to the contrary a party cannot deduct from the period of the statute of limitations the time during which the action so dismissed was pending.").
The panel opinion suggests that this treatment of dismissals without prejudice is not a uniform rule and that "for many ... purposes, the dismissed action continues to have legal effect." Panel Op. 23. This is not correct. The panel indicates only two such claimed instances: (1) where a dismissal without prejudice does not bar *1353 an award of costs as a sanction for a frivolous filing, see, e.g. , Cooter & Gell v. Hartmarx Corp. , 496 U.S. 384, 395-96, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990), and (2) where the filing is relied on to establish a controversy between the parties for assessing declaratory judgment jurisdiction, see TransWeb, LLC v. 3M Innovative Props. Co. , 812 F.3d 1295, 1300 (Fed. Cir. 2016). But neither of these is a situation where the issue is the legal effect of the earlier filing, and the question is whether the original filing triggers a legal obligation, such as the start of a time period. In that situation, the cases are uniform that, absent contrary intent, the earlier dismissed filing (or in this case service) has no legal effect.
We ruled in Abbott Laboratories v. TorPharm, Inc. , 503 F.3d 1372, 1379 (Fed. Cir. 2007), that "[w]e assume Congress's familiarity with general principles of law when enacting a statute." In other words, "Congress is presumed to legislate against the backdrop of existing law." Morgan v. Principi , 327 F.3d 1357, 1361 (Fed. Cir. 2003) ; accord Cannon v. Univ. of Chi. , 441 U.S. 677, 698-99, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979). This widespread treatment of voluntary dismissals without prejudice provided the background for the enactment of section 315(b), and section 315(b) must be read in light of that background legal principle, so that the one year time-bar is not triggered if the underlying infringement action is voluntarily dismissed without prejudice.
The importance of assessing the statutory language in the light of background principles is confirmed by Keene Corp. v. United States , 508 U.S. 200, 113 S.Ct. 2035, 124 L.Ed.2d 118 (1993). There the statute provided that "the Court of Federal Claims 'shall not have jurisdiction' over a claim, 'for or in respect to which' the plaintiff 'has [a suit or process] pending' in any other court." Id. at 207, 113 S.Ct. 2035 (alteration in original) (quoting 28 U.S.C. § 1500 ). The question was whether dismissal without prejudice of the previously filed action eliminated the jurisdictional bar. Id. at 202-05, 113 S.Ct. 2035. The Supreme Court held that it did not. Id. at 209, 217, 113 S.Ct. 2035. The Supreme Court did not primarily rely on the language of the statute to resolve the question, but looked instead to another applicable background principle-in that case the principle that jurisdiction is to be determined at the time the action (there the Claims Court action) was filed. Id. at 205-07, 113 S.Ct. 2035. "In applying the jurisdictional bar here by looking to the facts existing when Keene filed each of its complaints, the Court of Federal Claims followed the longstanding principle that 'the jurisdiction of the Court depends upon the state of things at the time of the action brought.' " Keene , 508 U.S. at 207, 113 S.Ct. 2035 (quoting Mollan v. Torrance, 9 Wheat. 537, 539, 22 U.S. 537, 6 L.Ed. 154 (1824) (Marshall, C.J.) ). In light of that principle, the Court held that the pendency of the district court action, at the time the Claims Court action was filed, was a bar. Id. at 209, 113 S.Ct. 2035. So here, the background principle is that the dismissal of an action without prejudice leaves the parties as though the action had never been brought.
Third, typically where there is an intention to depart from the normal treatment of voluntary dismissals without prejudice, the statute or the rule says so explicitly, there is a clear legislative decision to depart from the usual rule, or, as in Keene , there is a conflicting background principle. For example, Rule 41 itself states that we should depart from the normal rule when "the plaintiff previously dismissed any federal- or state-court action based on or including the same claim, [in which case] a notice of dismissal operates as an adjudication on the merits."
*1354 Fed. R. Civ. P. 41(a)(1)(B). Similarly, in Flowers v. Secretary of the Department of Health & Human Services , 49 F.3d 1558, 1560-61 (Fed. Cir. 1995), we found that the Vaccine Act banned claimants from seeking related benefits "[i]f a plaintiff has pending a civil action for damages for a vaccine-related injury or death," 42 U.S.C. § 300aa-11(a)(5), even if that action was subsequently voluntarily dismissed without prejudice. Congress originally provided in the act that the co-pending bar would not apply if the plaintiff "withdraw[s] the action." Flowers , 49 F.3d at 1560 (quoting Pub. L. No. 99-660, tit. III, § 2111(a)(5), 100 Stat. 3755, 3759 (codified at 42 U.S.C. § 300aa-11(a)(5) (1988) ) ). Congress, however, specifically repealed the exception. We concluded that the usual rule concerning voluntary dismissals without prejudice did not apply, because Congress specifically manifested contrary intent by removing the provision. Id . at 1561.
Likewise, in Jenkins v. Village of Maywood , 506 F.3d 622 (7th Cir. 2007), the Seventh Circuit recognized that the statute of limitations for a § 1983 claim could be tolled by the filing of a suit, later voluntarily dismissed without prejudice, because the Illinois statute governing the statute of limitations
provides that if an action is voluntarily dismissed by the plaintiff, "then, whether or not the time limitation for bringing such action expires during the pendency of such action, the plaintiff ... may commence a new action within one year or within the remaining period of limitation, whichever is greater ... after the action is voluntarily dismissed by the plaintiff[.]"
Id. at 624 (alterations in original) (quoting 735 ILL. COMP. STAT. ANN. 5/13-217 ).[3]
The fact is that Congress did not include any language in section 315(b) addressing voluntary dismissals without prejudice and here, contrary to the panel opinion, there is no legislative history supporting an opposing interpretation, suggesting that Congress intended to follow the usual rule, that such dismissals render the complaint a nullity.[4]
Finally, the purpose of the statute, as reflected in the legislative history, supports reading section 315(b)'s time bar as being inapplicable to voluntary dismissals without prejudice. One purpose of the statute was to require that the IPR petitioner file the IPR promptly after receiving notice of the patentee's claims through the filing of the infringement action. The panel opinion notes that Senator Kyl explained that the "315(b) deadline afford[s] defendants a reasonable opportunity to identify and understand the patent claims that are relevant to the litigation." 157 Cong. Rec. S5429 (daily ed. Sept. 8, 2011) (statement of Sen. Kyl).
While the panel opinion argues that the notice function supports their interpretation, in fact, the notice function would not be vindicated if the underlying complaint were voluntarily dismissed without prejudice. When an action is filed, and then later voluntarily dismissed, the accused infringer is led to think that the controversy has dissipated. In other words, the notice *1355 function of the filing is effectively eliminated by the dismissal without prejudice.
As discussed earlier, in the comparable situation involving statutes of limitations, while the original filing provides notice to the defendant,[5] that notice is nullified by a voluntary dismissal without prejudice, and the original filing does not toll the statute of limitations. See , e.g. , Willard , 164 U.S. at 523, 17 S.Ct. 176. Here, as in the limitations context, the underlying purpose of section 315(b) is not served by filing a complaint that is voluntary dismissed without prejudice.
The statute was designed to give the petitioner a full year after receiving notice of the filing of the action to file the IPR, so that the potential petitioner could be fully aware of the claims and products at issue in the infringement litigation. The one year time-bar was intended to go into effect only after the defendant knows "which claims will be relevant and how those claims are alleged to read on the defendant's products." 157 Cong. Rec. S5429 (daily ed. 2011) (statement of Sen. Kyl). Despite the assertions to the contrary (Panel Op. 15-17), this purpose is thwart-ed by an early voluntary dismissal without prejudice. In that situation, the defendant is unlikely to have received the contemplated information, and that information will be of limited value, as the defendant has been led to believe that the underlying infringement action will no longer continue.
So too, one of the purposes of section 315(b) in setting a one year time period was to bar the filing of an IPR when, typically, the district court action would have already consumed the time and attention of the court and parties. We have pointed out that in the inter partes review context, the "legislative history confirms ... 'Congress's desire to enhance the role of the PTO and limit the burden of litigation on courts and parties.' " Murata Mach. USA, Ltd. v. Daifuku Co. , 830 F.3d 1357, 1362 (Fed. Cir. 2016) (quoting NFC Tech. LLC v. HTC Am., Inc. , 2015 WL 1069111, at *5 (E.D. Tex. 2015) ) (discussing AIA legislative history). However, the situations that result in a voluntary dismissal without prejudice do not implicate these concerns. This is because voluntary dismissals usually come early in the case, typically before the answer is filed or by agreement from both parties.
Finally, the purposes of section 315(b) will be defeated if the patentee plaintiff is allowed to manipulate the filing of infringement actions in order to bar a future IPR challenge. Indeed, if dismissals without prejudice did not nullify the underlying complaint, patent owners would have an incentive to file suits alleging infringement and subsequently voluntarily dismiss these suits without prejudice after service of a complaint. Such actions would effectively begin the one year clock for the accused infringer to file an IPR, even when there was no longer an underlying infringement action. Congress could not have intended to provide a mechanism for such manipulation.
Thus, we conclude that, contrary to the en banc holding, the section 315(b) time-bar should not apply when the underlying complaint alleging infringement has been voluntarily dismissed without prejudice.

See, e.g. , Jorge v. Rumsfeld , 404 F.3d 556, 563 (1st Cir. 2005) ("[A] prescriptive period is not tolled by filing a complaint that is subsequently dismissed without prejudice."); Garfield v. J.C. Nichols Real Estate , 57 F.3d 662, 666 (8th Cir. 1995) ("A dismissal without prejudice does not toll a statute of limitations."); Beck v. Caterpillar Inc. , 50 F.3d 405, 407-08 (7th Cir. 1995) (holding that the statute of limitations was not tolled and continued to run when plaintiff voluntarily dismissed his first suit under Rule 41(a) ); Simons v. Sw. Petro-Chem, Inc. , 28 F.3d 1029, 1030 (10th Cir. 1994) (holding that the plaintiff's Title VII claim was not timely filed because her earlier case that was voluntarily dismissed without prejudice under Rule 41(a)(2) did not toll the statutory limitations period);
Robinson v. Willow Glen Acad. , 895 F.2d 1168, 1169 (7th Cir. 1990) (holding that a tolling provision under Wisconsin state law that was tied to the "commencement of an action" did not apply if that action was then voluntarily dismissed under Rule 41(a)(2) ); Davis v. Smith's Transfer, Inc. , 841 F.2d 139, 140 (6th Cir. 1988) (per curiam) (no tolling of statute of limitations based on earlier suit dismissed under Rule 41(a) ); Dupree v. Jefferson , 666 F.2d 606, 610-11 (D.C. Cir. 1981) (taking note of the "rule" "that a statute of limitations is not tolled during pendency of an action voluntarily dismissed without prejudice"); Curtis v. United Transp. Union , 648 F.2d 492, 495 (8th Cir. 1981) (stating "the rule that the entry of a voluntary dismissal without prejudice leaves the action as if suit had never been brought for purposes of the statute of limitations"); Humphreys v. United States , 272 F.2d 411, 412 (9th Cir. 1959) (holding that a voluntary dismissal under Rule 41(a)(2) does not toll the statute of limitations under the Federal Tort Claims Act).
See also Willard v. Wood , 164 U.S. 502, 523, 17 S.Ct. 176, 41 L.Ed. 531 (1896) (noting "[t]he general rule in respect of limitations ... that if ... [an] action abates or is dismissed, and, during the pendency of the action, the limitation runs, the remedy is barred"); 8 Moore's Fed. Prac. Civ. § 41.33(6)(d) (2018); 9 Charles A. Wright & Arthur R. Miller, Fed. Prac. & Proc. Civ. § 2367 (3d ed. 2018).

See, e.g. , In re Matthews , 395 F.3d 477, 480 (4th Cir. 2005) ("[A]fter an action is voluntarily dismissed, the court lacks authority to conduct further proceedings on the merits."); Williams v. Clarke , 82 F.3d 270, 272-73 (8th Cir. 1996) (holding that voluntary dismissal under Rule 41(a)(1) applies to habeas corpus petitions filed under 28 U.S.C. § 2254 and strips the appellate court of jurisdiction over the action); Norman v. Arkansas Dep't of Educ. , 79 F.3d 748, 751 (8th Cir. 1996) (holding that after the district court dismissed the case without prejudice, it "lacked jurisdiction to take any further action in it, including dismissing the case with prejudice"); Smith v. Dowden , 47 F.3d 940, 943 (8th Cir. 1995) (holding that the voluntary dismissal of a claim in the bankruptcy court under Fed. R. Bankr. P. 3006 strips the bankruptcy court of its equitable jurisdiction and restores the dismissed party's jury-trial right); LeCompte v. Mr. Chip, Inc., 528 F.2d 601, 603 (5th Cir. 1976) (explaining that a plaintiff generally cannot appeal a voluntary dismissal without prejudice under Rule 41(a)(2), but may appeal if the order has the effect of being a dismissal with prejudice).

See, e.g. , Harvey Specialty & Supply, Inc. v. Anson Flowline Equip. Inc. , 434 F.3d 320, 324 (5th Cir. 2005) (holding that a voluntary dismissal under Rule 41(a)(1) does not result in a final judgment that could support collateral estoppel or the relitigation exception under the Anti-Injunction Act); AVX Corp. v. Cabot Corp. , 424 F.3d 28, 32-34 (1st Cir. 2005) (holding that claim preclusion did not apply to claims that had been voluntarily dismissed under Rule 41(a)(1)(ii) by joint stipulation of the parties); In re Corey , 892 F.2d 829, 835 (9th Cir. 1989) (holding that a voluntary dismissal without prejudice "has no res judicata effect"); In re Piper Aircraft Distrib. Sys. Antitrust Litig. , 551 F.2d 213, 219-20 (8th Cir. 1977) (holding that the district court erred by giving preclusive effect to the denial of class action status under Rule 23(c) in another case that had been subsequently dismissed without prejudice pursuant to Rule 41(a)(1)(i), because there was no "valid and final judgment" necessary for "collateral estoppel"). Cf. Navellier v. Sletten , 262 F.3d 923, 938 (9th Cir. 2001) (finding no abuse of discretion in district court's voluntary dismissal of claims under Rule 41(a)(2) and holding that the court did not have to inform the jury that the dismissed claims might later be refiled).

Several legislators opposed § 315(b) in the House bill for exactly that reason, explaining that § 315(b)'s bright-line "12-month deadline" is not "tied to substantive progress in patent litigation, such as the entry of an order by the district court construing the relevant patent claims," and arguing that a strict 12-month deadline is "arbitrary" as it "does not account for the complexity of many patent cases that can encompass dozens of patents and defendants and hundreds of separate patent claims." H.R. Rep. No. 112-98, at 164-65. A proposed amendment offered by one of those legislators to tie the deadline to entry of a claim construction order failed. Id. at 58.

Contrary to the panel opinion (Panel Op. 14), this issue was not addressed, much less resolved, in the en banc Wi-Fi opinion. See Wi-Fi One, LLC v. Broadcom Corp. , 878 F.3d 1364 (Fed. Cir. 2018) (en banc).

See also Harvey Specialty & Supply, Inc. v. Anson Flowline Equip. Inc ., 434 F.3d 320, 324 (5th Cir. 2005) ("The effect of [a Rule 41(a)(1) ] dismissal is to put the plaintiff in a legal position as if he had never brought the first suit." (alteration in original) (quoting LeCompte v. Mr. Chip, Inc., 528 F.2d 601, 603 (5th Cir. 1976) ) ); Navellier v. Sletten , 262 F.3d 923, 938 (9th Cir. 2001) ("A dismissal without prejudice ... leaves the parties where they would have stood had the lawsuit never been brought." (citing In re Corey , 892 F.2d 829, 835 (9th Cir.1989) ) ); Beck v. Caterpillar, Inc. , 50 F.3d 405, 407 (7th Cir. 1995) ("While [plaintiff's] first lawsuit was filed within the limitations period, that suit was voluntarily dismissed ... and is treated as if it had never been filed."); Simons v. Southwest Petro-Chem, Inc. , 28 F.3d 1029, 1030-31 (10th Cir. 1994) ; Humphreys v. United States, 272 F.2d 411, 412 (9th Cir. 1959) ("[A] suit dismissed without prejudice pursuant to Rule 41(a)(2) leaves the situation the same as if the suit had never been brought in the first place.").

Both the panel opinion and Judge Taranto's concurring opinion rely on section 315(a)(2)(C) as supporting the en banc holding showing that Congress made a deliberate choice not to refer to voluntary dismissals. Panel Op. 15; Concurring Op. 1342-43. Section 315(a)(2)(C) simply provides that when an IPR has been instituted a later filed court action must be stayed until the court action is "dismissed." It is difficult to see how this can be read as congressional rejection in section 315(b) of the usual rule concerning the consequences of a voluntary dismissal.

Nor is this like Keene , discussed above, in which another background principle is predominant.

See Crown, Cork & Seal Co. v. Parker , 462 U.S. 345, 352, 103 S.Ct. 2392, 76 L.Ed.2d 628 (1983) ("Limitations periods are intended to put defendants on notice of adverse claims and to prevent plaintiffs from sleeping on their rights ....").